IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| RUSSELL WILLIAM TUCKER, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | 1:07-CV-868 |
| EDWARD THOMAS, Warden, Central Prison, Raleigh, North Carolina, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

    Russell William Tucker, a prisoner of the State of North Carolina, was sentenced to death for the 1994 murder of Maurice Travone Williams. On February 21, 2008, pursuant to 28 U.S.C. § 2254, he filed a petition for a writ of habeas corpus challenging his conviction and sentence. After staying the petition for a significant period, the Court lifted the stay on May 15, 2015. Mr. Tucker has since filed a First Amended Petition and a Second Amended Petition adding additional claims.

    This order addresses Mr. Tucker's claim of juror misconduct, raised in his original petition. Doc. 11 at 15-18 (Ground Two). The Court concludes that the petitioner is entitled to an evidentiary hearing before this claim can be resolved. The Court will refer the matter to the Magistrate Judge for a hearing and recommended findings on whether a juror communicated with a third party about the matter pending before the jury and, if so,

whether the contact draws into question the integrity of the verdict, and for a recommendation as to the merits of the juror misconduct claim.

An opinion on the other issues raised in the original and amended petitions will be entered once briefing is completed on the amended petitions and as time permits.

I. **Background[1]**

On December 8, 1994, Mr. Tucker stole items from the Super K-Mart Center in Winston-Salem, North Carolina. *State v. Tucker*, 347 N.C. 235, 239-40, 490 S.E.2d 559, 561 (1997); Doc. 11-1 at 13-16.[2] When confronted by store employees in the parking lot, Mr. Tucker pulled out a handgun and shot at the employees, killing one. Mr. Tucker then ran toward a wooded area. In his efforts to escape, he shot and wounded two Winston-Salem police officers. He fled after he ran out of ammunition, but he was located and arrested approximately an hour later.

---

[1] The Court addresses facts, procedural history, and law only to the extent needed to resolve the issue of whether Mr. Tucker is entitled to an evidentiary hearing on his claim that juror misconduct violated his constitutional rights. The Court relies on the factual descriptions of this case in the North Carolina Supreme Court's denial of Mr. Tucker's direct appeal, *State v. Tucker*, 347 N.C. 235, 490 S.E.2d 559 (1997), and in the Order Denying Second Amended Motion for Appropriate Relief entered by the Forsyth County Superior Court (the "MAR Court"). Doc. 11-1; *see* note 2 *infra*.

[2] The MAR Court's decision is available on the electronic docket at Doc. 11-1. Inexplicably, the ECF system appended the wrong docket number to the bottom of each page of the MAR Court's decision. The Court will reference the MAR Court's decision as Doc. 11-1, and will cite to the document's original pagination. The same mistake occurred with the North Carolina Supreme Court's denial of certiorari, which is shown on the docket as Doc. 11-2 but has a different docket number appended internally. The Court will also refer to this document as Doc. 11-2, the number displayed on the electronic docket.

2

Mr. Tucker pleaded not guilty to the crimes at the Super K-Mart and proceeded to trial. *See* Doc. 11-1 at 1-2. The jury found Mr. Tucker guilty of first-degree murder by premeditation and deliberation and pursuant to the felony murder rule based on his assault with a deadly weapon with intent to kill the K-Mart employee, two counts of assault with a firearm on a law enforcement officer, and discharging a firearm into an occupied vehicle. *Id.* at 2, 16.

During the sentencing phase, the State presented evidence to support four aggravating circumstances. *See Tucker*, 347 N.C. at 245, 490 S.E.2d at 564. The jury found all four aggravating circumstances, as well as three mitigating circumstances. *Id.*; Doc. 11-1 at 2. The jury recommended that Mr. Tucker be sentenced to death, and the trial court sentenced him accordingly. *Tucker*, 347 N.C. at 239, 490 S.E.2d at 561. The North Carolina Supreme Court affirmed the conviction and sentence, *id.* at 245-47, 490 S.E.2d at 564-65, and the United States Supreme Court denied certiorari. *Tucker v. North Carolina*, 523 U.S. 1061 (1998).

## II. The Juror Misconduct Claim

### A. The Motion for Appropriate Relief

After his conviction was upheld on direct appeal, Mr. Tucker filed a motion for appropriate relief ("MAR") in state court pursuant to North Carolina's statutory post-conviction process. N.C. Gen. Stat. §§ 15A-1411 to 15A-1422. As is relevant here, Mr. Tucker asserted that one of the jurors spoke to his neighbor about the religious implications of the death penalty while the trial was in process, violating Mr. Tucker's Sixth Amendment right to an impartial jury. Doc. 11-1 at 5.

3

In support of his MAR, Mr. Tucker submitted affidavits from two law students who had interviewed jurors. Doc. 11-1 at 113; Ex. 21 to Doc. 13 (attaching Anstett Aff., Mar. 26, 1999 and May Aff., Mar. 26, 1999).[3] Each student testified in their affidavits that the juror, Brenton Sharpe, "revealed to me that he had difficulty in returning a sentence of death and that he remembered being the most reluctant of the jurors to vote for death." Ex. 21 to Doc. 13 at Anstett Aff. ¶ 4 and May Aff. ¶ 4. Each student then testified:

> 5. [That] Mr. Sharpe also stated that after the verdict of guilty was entered and before the sentencing deliberations began, he consulted with a neighbor, who is a pastor and a Sunday school teacher;
> 6. That his reason for speaking with this individual before the sentencing phase began was to determine whether or not his soul would be condemned by God or placed in jeopardy for sentencing a man to die;
> 7. That this neighbor gave Mr. Sharpe Bible verses to read;
> 8. That after speaking with his neighbor and reading the Bible verses, Mr. Sharpe was confident that he would not suffer personally for sentencing someone to death and that someone had to be the judge on earth.
> 9. That Mr. Sharpe did not mention his actions to the Court or other jurors.

Ex. 21 to Doc. 13 at Anstett Aff. ¶¶ 5-9 and May Aff. ¶¶ 5-9.

The MAR Court denied the claim on three grounds. First, the court interpreted the claim as seeking to impose a new rule of constitutional law "that spiritual guidance given to a juror about his own spirituality is prejudicial to a defendant and violates his federal constitutional rights." Doc. 11-1 at 113. Finding that the proposed new rule fit into no

---

[3] The parties manually filed this exhibit and many other exhibits related the original petition with the clerk, and they are not on the electronic docket. The Court will use this format to cite to any manually submitted exhibits. However, for ease of access, the Court will generally reference the MAR Court's decision, which cites the relevant materials.

4

allowed exception, the court held that *Teague v. Lane*, 489 U.S. 288 (1989), barred his claim. Doc. 11-1 at 114.

Second, the MAR Court summarily denied the claim as unsupported by admissible evidence. *Id*. at 114-15. The court read the MAR statute to require submission of admissible evidence before an evidentiary hearing is needed. *Id.* at 114; *see* N.C. Gen. Stat. § 15A-1420(b)(1) ("A motion for appropriate relief . . . must be supported by affidavit or other documentary evidence if based upon the existence or occurrence of facts which are not ascertainable from the records[.]"). The only affidavits supporting this claim were from the law students, not from Juror Sharpe or anyone else with personal knowledge of Juror Sharpe's actions. *See* Doc. 11-1 at 114. Because the only evidence came from witnesses without personal knowledge and was thus hearsay, the MAR Court held that the petitioner had not presented any admissible evidence to support his assertions of fact. *Id.* at 114-15.[4] The MAR Court concluded that Mr. Tucker was therefore not entitled to an evidentiary hearing or to relief. *Id.* at 117-18.

Third, the court rejected the claim on its merits. *Id.* at 115-17. Accepting as true the claim that Juror Sharpe contacted a pastor about his own spirituality, the MAR Court found the juror's "spirituality is not a matter before the jury in [Mr. Tucker's] case and [is] not sufficient to impeach the jury's verdict." *Id.* at 115. The court concluded that

---

[4] The MAR Court also found that the statements contained in the affidavits would be inadmissible because they did not concern "extrinsic matters" and would be introduced to impeach the jury's verdict, which is prohibited by state and federal law. Doc. 11-1 at 115 (quotation marks omitted); *see* N.C. Gen. Stat. § 8C-1, Rule 606; Fed. R. Evid. 606.

5

"religious guidance to a juror about the juror's own spirituality does not violate [the constitutional] right to confrontation because the guidance is not information about Defendant or the facts of his case." *Id.* at 116 (emphasis omitted) (citing N.C. Gen. Stat. § 15A-1240, Rule 606(b)); *see State v. Heatwole*, 344 N.C. 1, 12, 473 S.E.2d 310, 314-15 (1996).

The North Carolina Supreme Court summarily denied Mr. Tucker's petition for certiorari. Doc. 11-2. Through counsel, Mr. Tucker filed a habeas corpus petition in this Court raising this and other issues, pursuant to 28 U.S.C. § 2254. Doc. 11.[5]

**B. Issue Presented**

Mr. Tucker asserts that Juror Sharpe's communication with his neighbor about the case during the sentencing hearing violated his constitutional rights to a fair trial and an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Id.* at 15-16. He further contends that the state court's rejection of the claim and failure to provide an evidentiary hearing was an unreasonable application of federal law. Doc. 11 at 17.

It is undisputed that Mr. Tucker has exhausted this claim in state court.

---

[5] After initial briefing was completed and a lengthy stay, the case was reopened and the parties filed supplemental briefing on this and other issues raised in the original petition. *See* Minute Entry 11/19/2009 (initially holding case in abeyance); Doc. 60 (lifting stay in 2015); Docs. 82, 88. There have been other procedural developments in the case, but none appear relevant to the juror misconduct issue and therefore they are not summarized here.

## C. Legal Standards

### 1. Juror Misconduct Claims

Under the Sixth Amendment to the United States Constitution, every person accused of a crime has the right to a trial by an impartial jury and the right to confront the witnesses against him or her. U.S. Const. amend. VI. An impartial jury should reach its verdict "based upon the evidence developed at trial," *Irvin v. Dowd*, 366 U.S. 717, 722 (1961), and "[t]he integrity of jury proceedings must not be jeopardized by unauthorized invasions." *Remmer v. United States*, 347 U.S. 227, 229 (1954). "It is clearly established under Supreme Court precedent that an external influence affecting a jury's deliberations violates a criminal defendant's right to an impartial jury." *Barnes v. Joyner*, 751 F.3d 229, 240-41 (4th Cir. 2014) (collecting authorities); *see Fullwood v. Lee,* 290 F.3d 663, 677 (4th Cir. 2002) ("The Supreme Court has clearly stated that private communications between an outside party and a juror raise Sixth Amendment concerns.").

As early as 1892, the Supreme Court pointed out that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox v. United States,* 146 U.S. 140, 150 (1892). "[A]ny private communication . . . with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." *Remmer*, 347 U.S. at 229.

In *Remmer*, the Supreme Court also "clearly established not only a presumption of prejudice, but also a defendant's entitlement to an evidentiary hearing, when the

defendant presents a credible allegation of communications or contact between a third party and a juror concerning the matter pending before the jury." *Barnes*, 751 F.3d at 242; *see also Haley v. Blue Ridge Transfer Co.,* 802 F.2d 1532, 1535 (4th Cir. 1986); *accord Stouffer v. Trammell,* 738 F.3d 1205, 1214 (10th Cir. 2013) ( "The trial court's duty to conduct a *Remmer* hearing when genuine concerns of improper juror contact arise is clearly established by the Supreme Court."). The requirement for a hearing on prejudice cannot be circumvented by accepting the factual allegations as true. *Barnes*, 751 F.3d at 250.

### 2. Federal Habeas Review of State Convictions

Federal courts apply a highly deferential standard of review to habeas corpus claims "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). However, a federal court may grant relief if the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "Clearly established Federal law" includes only the holdings, and not the dicta, of the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" Supreme Court precedent if the state court decision either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent." *Id.* at 405-06.

A state court decision involves an "unreasonable application" of Supreme Court case law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "Unreasonable" does not mean merely "incorrect" or "erroneous." *Id.* at 410-11. "[E]ven 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). To obtain habeas corpus from a federal court, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When the state court fails to hold a hearing on claims of juror misconduct in the face of credible allegations of contact between a juror and a third party, it unreasonably fails to apply clearly established federal law. *Barnes*, 751 F.3d at 251. Under these circumstances, the federal habeas court must hold a hearing to determine whether the misconduct occurred and, if so, whether the state court's failure "had a substantial and injurious effect or influence on the jury's verdict." *Id.* at 252-53; *Hurst v. Joyner*, 757 F.3d 389, 391 (4th Cir. 2014); *see also Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (defining the standard to prove that a constitutional error was not harmless). The *Remmer* presumption of prejudice "does not apply in the federal habeas context," so a federal habeas petitioner must "prove actual prejudice by demonstrating that the jury's verdict was tainted by the extraneous communication." *Barnes*, 751 F.3d at 252-53; *Hurst*, 757 F.3d at 400.

**D. Analysis**

An evidentiary hearing is appropriate in the circumstances of this case, which are essentially the same as in *Barnes* and *Hurst*. As the record set forth *supra* makes clear, Mr. Tucker made a credible allegation of third-party contact with a juror and the MAR Court did not hold a hearing to determine whether the third-party contact happened. Though the MAR Court also considered whether the third-party contact, if true, affected the sentence, the MAR Court did not apply the *Remmer* presumption, or indeed even mention *Mattox*, *Remmer,* or any of their progeny and instead found that Mr. Tucker was not entitled to an evidentiary hearing. *See* Doc. 11-1 at 115-18.

Two witnesses attest that after the trial, a juror admitted to having a discussion about the death penalty with a third party while the trial was in process. Ex. 21 to Doc. 13 at Anstett Aff. and May Aff. Based on this facially credible claim of third party interference, Mr. Tucker was entitled to an evidentiary hearing to determine whether juror misconduct had occurred, and the MAR Court's failure to hold a hearing was an unreasonable application of federal law. *See Barnes*, 751 F.3d at 244 (holding that "it is clearly established federal law for purposes of our review under AEDPA that a defendant is entitled to a hearing when he or she presents a credible allegation of communications or contact between a third party and a juror concerning the matter pending before the jury").

Following the procedure set forth in *Barnes,* the Court will direct the Magistrate Judge to hold a hearing to determine whether the misconduct occurred and, if so, whether the state court's failure "had a substantial and injurious effect or influence on the jury's

verdict." *Id.* at 253. At the hearing, Mr. Tucker will have an opportunity to establish that the misconduct occurred and, if it did, that the integrity of the verdict was affected.

### E. Respondent's Arguments

The respondent claims that *Barnes* and *Hurst* should not apply in Mr. Tucker's case because Mr. Tucker submitted only affidavits of investigators in support of his juror misconduct claim in his MAR proceedings, while the petitioners in *Barnes* and *Hurst* submitted affidavits from the actual jurors. Doc. 88 at 10. In *Hurst*, the petitioner supported his MAR claim with an affidavit from the juror involved in the contact, as well as with affidavits from investigators. *Hurst*, 757 F.3d at 392. In *Barnes*, however, the only evidence that a juror had contact with a third party consisted of affidavits from an investigator and an attorney setting forth statements made to them by various jurors that another juror had consulted with a pastor. *Barnes*, 751 F.3d at 235-36. While Mr. Barnes also offered affidavits from jurors, including the juror at issue, these affidavits merely stated that the juror at issue had read from a bible during deliberations and did not mention whether contact with a third party had or had not occurred. *Id.*

Even if the two cases were distinguishable based on the evidence provided, an evidentiary hearing would still be necessary. The *Barnes* court held that only "a credible allegation" is required, not admissible evidence. *Id.* at 244; *see also Fullwood*, 290 F.3d at 680-82 (remanding for an evidentiary hearing based on affidavit of one juror describing hearsay statements another juror made about her discussions with a third-party). Mr. Tucker has made a credible allegation that a member of his jury spoke with a third party about the implications of voting for a death sentence, and the Fourth Circuit

11

has determined that this kind of external communication requires an evidentiary hearing. *See Barnes*, 751 F.3d at 245-46.

The Respondent contends that Mr. Tucker's juror misconduct claim seeks to create a new rule of constitutional law about a juror's use of an external source to engage with questions of the juror's own spirituality and is thus barred by *Teague*. Doc. 13 at 7-8. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301. A review of Mr. Tucker's petition instead shows that Mr. Tucker seeks application of the rule established in *Remmer*. *See* 347 U.S. at 229. Moreover, the Fourth Circuit rejected a similar argument in *Barnes,* finding that an argument describing these communications as merely concerning the juror's own spirituality "misconstrues the point." *See Barnes*, 751 F.3d at 249. "To the extent that a juror had a conversation with a third party about the spiritual or moral implications of making this decision [to impose the death penalty], the communication 'was of such a character as to reasonably draw into question the integrity of the verdict.'" *Id.* (quoting *Stockton v. Virginia*, 852 F.2d 740, 743 (4th Cir. 1988)).

The respondent also contends that Mr. Tucker's juror misconduct claim is procedurally barred by an independent state ground: that the North Carolina MAR statute requires "admissible evidence" to be submitted before an evidentiary hearing is required. Doc. 13 at 8-9; *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (defining the federal habeas court's role vis-à-vis procedurally barred claims); *Bacon v. Lee*, 225 F.3d 470, 476 (4th Cir. 2000). This doctrine does not apply for three reasons. First, the MAR Court did not expressly state that it denied the claim as procedurally barred. *See* Doc. 11-

1 at 115, 118; *Coleman*, 501 U.S. at 750. Second, such a procedural bar has not been "consistently and regularly applied" to claims supported only by hearsay evidence. *McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000). "[I]n the absence of North Carolina law to the contrary, an MAR supported by affidavits that may arguably contain evidence deemed inadmissible does not fail on procedural grounds." *McNeill v. Polk*, 476 F.3d 206, 223 (4th Cir. 2007) (King, J., concurring); *see also McNeill*, 476 F.3d at 231 (Gregory, J., concurring in part and dissenting in part) (finding petitioner should receive an evidentiary hearing). Finally, the asserted procedural bar is inconsistent with and bound up with Mr. Tucker's claims that his federal constitutional rights were violated by that very rule. If a state rule is inconsistent with a well-established constitutional right to a hearing when credible evidence of juror misconduct is presented, then it cannot be enforced as a procedural bar. *See* U.S. Const. art. VI, cl. 2. *Cf. Haywood v. Drown*, 556 U.S. 729, 736 (2009) (finding States "lack authority to nullify a federal right . . . they believe is inconsistent with their local policies"). Mr. Tucker's claim is not barred by an adequate and independent state procedural rule.

### F. Conclusion

For these reasons, Mr. Tucker is entitled to an evidentiary hearing to determine whether the alleged external contact between Juror Sharpe and his neighbor occurred and, if it did, whether it had a substantial and injurious effect or influence on the jury's verdict. Because this case is on federal collateral review, the *Remmer* presumption of prejudice does not apply and Mr. Tucker must prove prejudice to obtain relief on this claim.

13

The Court will refer the matter to the Magistrate Judge for an evidentiary hearing and entry of a Recommendation.

It is **ORDERED that:**

1. The petitioner is entitled to an evidentiary hearing on whether there was external contact between a juror and a third party during his state court trial and, if there was, whether such contact had a substantial and injurious effect or influence on the jury's verdict.
2. The matter is referred to the Magistrate Judge for an evidentiary hearing and entry of a Recommendation on the juror misconduct issue raised in Ground Two of the original petition. Doc. 11 at 15-18.
3. All other claims for relief remain under advisement, and briefing shall continue on the schedule previously imposed.

This the 11th day of September, 2017.

_____
UNITED STATES DISTRICT JUDGE